# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TAYLOR ANDERS, HENNESSEY EVANS, ABBIGAYLE ROBERTS, MEGAN WALAITIS, TARA WEIR, and COURTNEY WALBURGER, Individually and on behalf of all those similarly situated.,

*Plaintiffs-Petitioners*,

v.

CALIFORNIA STATE UNIVERSITY, FRESNO, and BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY,

*Defendants-Respondents*.

On Appeal from the United States District Court for the
Eastern District of California Fresno Division, No. 1:21-cv-00179-AWI-BAM

## RESPONDENTS' OPPOSITION TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO FED. R. CIV. P. 23(f)

Scott R. Eldridge
Brian M. Schwartz
Erika L. Giroux
Ashley N. Higginson
MILLER, CANFIELD, PADDOCK
& STONE, PLC
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
schwartzb@millercanfield.com
eldridge@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com

Rob Bonta
ATTORNEY GENERAL OF CALIFORNIA
Jodi L. Cleesattle, SBN 230537
Supervising Deputy Attorney General
Jennifer L. Santa Maria, SBN 225875
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone: (619) 738-9099
Fax: (619) 645-2012
E-mail:
Jennifer.SantaMaria@doj.ca.gov

*Counsel for Defendants-Respondents California State University, Fresno and Board of Trustees of California State University*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................II

INTRODUCTION ............................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................2

    A.    Petitioners' Lawsuit...................................................2

    B.    Denial of Initial Motion for Class Certification.................5

    C.    Denial of Renewed Motion for Class Certification ............7

ARGUMENT ...................................................................................8

I.     STANDARD OF REVIEW................................................8

II.    THE PETITION IS UNTIMELY .....................................10

III.   THE DISTRICT COURT PROPERLY HELD PETITIONERS COULD NOT SATISFY RULE 23(A)(4) ...................10

    A.    The District Court's Ruling Is Consistent with Title IX Cases .........12

    B.    The District Court's Ruling Does Not Require Sport-Specific Advocacy and Is Not Manifestly Erroneous .....................14

    C.    The District Court Did Not Disregard Evidence...............16

    D.    Petitioners' Conflict Is Real ....................................17

    E.    A Liability-Only Class Is Improper .................................18

IV.   THE ORDER DENYING CLASS CERTIFICATION IS NOT A "DEATH KNELL" DILEMMA ...................19

CONCLUSION...............................................................................20

CERTIFICATE OF SERVICE ..........................................................22

CERTIFICATE OF COMPLIANCE....................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.B. by C.B. v. Hawaii State Department of Education*,
334 F.R.D. 600 (D. Haw. 2019), *rev'd and remanded sub nom. A.
B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828 (9th Cir. 2022) .......................13

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................................15, 18

*Andrews Farms v. Calcot, Ltd.*,
268 F.R.D. 380 (E.D. Cal. 2010) .................................................................11, 12

*Avilez v. Pinkerton Gov't Servs.*,
596 F. App'x 579 (9th Cir. 2015) .......................................................................18

*Balow v. Mich. State Univ.*,
No. 1:21-CV-44, 2022 WL 3152232 (W.D. Mich. Aug. 8, 2022) ....................19

*Boucher v. Syracuse Univ.*,
164 F.3d 113 (2d Cir. 1999) ...............................................................................12

*Brust v. Regents of the University of California*,
2008 WL 11512299 (E.D. Cal. Oct. 24, 2008)...................................................13

*Bryant v. Colgate Univ.*,
1996 WL 328446 (N.D.N.Y. June 11, 1996) .....................................................12

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .........................................................................9, 18

*Cohen v. Brown University*,
991 F.2d 881 (1st Cir. 1993)...............................................................................13

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)............................................................................................19

*Cummings v. Connell*,
316 F.3d 886 (9th Cir. 2003) ..............................................................................17

ii

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................11

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .............................................8, 9

*Foltz v. Delaware State University*,
    269 F.R.D. 419 (2010) .........................................................13

*Gardner v. Westinghouse Broad. Co.*,
    437 U.S. 478 (1978).............................................................19

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)...........................................10, 15, 16, 18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014).............................................................11

*Martin v. Sysco Corp.*,
    325 F.R.D. 343 (E.D. Cal. 2018) ........................................11

*Maves v. First Horizon Home Loans*,
    461 F. App'x 636 (9th Cir. 2011) .................................10, 18

*Miller v. Univ. of Cincinnati*,
    241 F.R.D. 285 (S.D. Ohio 2006).......................................12

*Nutraceutical Corp. v. Lambert*,
    139 S. Ct. 710 (2019)..........................................................10

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).............................................................14

*Robb v. Lock Haven Univ. of Pa.*,
    2019 WL 2005636 (M.D. Pa. May 7, 2019).......................13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................12

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    308 F.R.D. 630 (N.D. Cal. 2015)........................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
  895 F.3d 597 (9th Cir. 2018) .............................................................14

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)...............................................................10, 11

**Statutes**

42 U.S.C. § 1988(b) .............................................................................20

**Court Rules**

Fed. R. App. P. 32(a)(5).......................................................................23

Fed. R. App. P. 32(a)(6).......................................................................23

Fed. R. App. P. 32(f)............................................................................23

Fed. R. Civ. P. 23..............................................................................9, 11

Fed. R. Civ. P. 23(a).....................................................................*passim*

Fed. R. Civ. P. 23(a)(4).................................................................*passim*

Fed. R. Civ. P. 23(b)..............................................................................7

Fed. R. Civ. P. 23(c)(1)(a)................................................................9, 20

Fed. R. Civ. P. 23(c)(4).....................................................................7, 18

Fed. R. Civ. P. 23(f).......................................................................9, 10

Fed. R. Civ. P. 60(b) ...........................................................................10

# INTRODUCTION

There is nothing remarkable or novel about the Petition that warrants interlocutory review. In a well-reasoned opinion, the district court—*for a second time*—denied class certification under Fed. R. Civ. P. 23(a)(4) after reviewing testimony, pleadings, and settlement communications which substantiated an existing conflict between the proposed class representatives (Taylor Anders and Courtney Walburger, two athletes on the now-eliminated lacrosse team) and the proposed class (all current and future female students at Fresno State). The district court did not generally denounce broad class certification. Rather, on these facts, the proposed class representatives are inadequate, as they have a current, irreconcilable conflict with absent class members.

In its first decision denying certification, the district court provided a roadmap for how Petitioners could obtain class certification of a broad class of female students. Petitioners declined to follow that guidance. Specifically, the district court allowed Petitioners to file another motion to ensure that the interests of putative class members were adequately represented. Petitioners could have identified another student-athlete or even another student who did not possess the same conflict. Or, per the district court's invitation, they could have sought a lacrosse-only class. For reasons known only to Petitioners, in a school of over 22,000 students, they decided not to identify another proposed representative. Instead, they made the same arguments (which were rejected) and then filed a Petition rife with hyperbole.

Petitioners' arguments are off the mark. They misconstrue the district court's ruling as creating a due process right for sport-specific advocacy. Instead, it relied upon well-established precedent confirming that the purpose of Rule 23(a)(4) is to protect the interests of *absent* class members throughout the litigation. Based on the facts in this case, the court correctly held that Petitioners failed to satisfy their burden under Rule 23(a)(4). That is not manifest error, nor creation of novel law.

Petitioners also mistakenly allege that failure to certify a broad class, despite inadequate representatives, will be a death knell. In reality, Petitioners' counsel is currently litigating the exact same claims *without a class* in another jurisdiction. Any pressure Petitioners feel is a problem they created by failing to identify alternative class representatives and by failing to expeditiously litigate this case.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Petitioners' Lawsuit

As the district court explained, "[t]his case is fundamentally about women's lacrosse." (Petitioners' Exhibit 1 (Ex. 1), p. 20). On October 16, 2020, Fresno State announced that in 2021-2022, it would no longer sponsor men's tennis, men's wrestling, and women's lacrosse. (*Id.*, pp. 1-2). On February 12, 2021, Petitioners filed a class action complaint regarding Fresno State's decision, with a motion for a preliminary injunction seeking to reinstate lacrosse. (*Id.*, p. 2).

At the preliminary injunction stage, Petitioners questioned whether certain members of the now proposed class—equestrian and track and field and cross-

country female student-athletes—should be counted as "participants" for the purposes of Title IX. (*Id.*, p. 19, quoting ECF No. 2-9 at 36-38, 42, 43). In other words, Petitioners argued that putative class members were not true student-athletes. (*Id.*) On April 21, 2021, the Court denied Petitioners' request for immediate reinstatement of the lacrosse team. (ECF No. 35).

Petitioners filed a Second Amended Complaint ("SAC") on August 12, 2021. (1-SER-4). Demonstrating lacrosse's primacy in their lawsuit, the SAC only refers to the treatment of lacrosse and only refers to one team when seeking specific relief (lacrosse). (*Id.* 1-SER-37-38, 48-49). While Petitioners allege generally that female student-athletes at Fresno State are treated worse as to various categories of benefits, (1-SER-36), the SAC does not include any factual allegations about a women's sport other than lacrosse.

The proposed representatives' testimony also shows a lacrosse-bias. Anders testified that "[o]f course it was a goal to have the lacrosse team reinstated," "[o]f course I want to play lacrosse[,] **that's what it was about in the beginning[,] [t]hat's what it's about now**[,]" that she "would be disappointed, of course, if the … lacrosse team was not reinstated," and that "[t]he reinstatement of the team was part of the bigger picture." (1-SER-68, 78) (emphasis added).

Walburger similarly testified that it "would be sad" if lacrosse were not reinstated, that she joined this lawsuit only after "Fresno wasn't going to honor [her]

scholarship," and that before the scholarship issue she did not want to be a part of this lawsuit and was not a Plaintiff. (1-SER-96, 97). Walburger also testified that she understood the class she would be representing to be her lacrosse teammates (prior to correction by her counsel on cross). (1-SER-95). Further, Walburger admitted that none of the allegations set forth in the initial lawsuit "directly happened to me. And then, once something directly happened to me, I was like, 'Okay. This isn't fair to me or to my teammates'" and confirmed that the "thing" that happened to her was the threat of losing her lacrosse scholarship (which she received). (1-SER-96).

Anders and Walburger also speculated during their depositions that women's lacrosse was treated poorly compared to other teams, but repeatedly admitted that they had no knowledge of how any other women's teams, or men's teams other than football and basketball, were treated. For example:

- **Equipment:** Anders lacked knowledge as to equipment issued other than lacrosse, football, and men's basketball. (1-SER-55). Walburger admitted that lacrosse was the "only" team with gear issues. (1-SER-88-90; 103).

- **Food:** Anders and Walburger only know about men's basketball and football. (1-SER-55, 56, 93).

- **Practice Facilities:** Anders testified that all other teams—including women's teams—were treated better than lacrosse. (1-SER-57). Walburger identified football. (1-SER-104, 105).

- **Locker Room Facilities:** Anders and Walburger admitted no first-hand knowledge of any other team's locker room. (1-SER-58, 106).

- **Travel:** Anders has no knowledge about how other teams travelled, aside from men's basketball and football, based on hearsay. (1-SER-60). Walburger compared lacrosse's travel arrangements to men's basketball and golf but had no

knowledge as to women's teams. (1-SER-98, 99).

- **Per Diem:** Anders and Walburger do not know specifics of the per diem policy. (1-SER-61, 62, 107).

- **Competition Scheduling:** Anders has no knowledge of other teams. (1-SER-70). Walburger acknowledged that all teams were treated the same with respect to pandemic cancellations and, other than football, scheduling. (1-SER-84-96, 102).

- **Coaching Contracts:** Anders and Walburger have no knowledge of other teams' coaching contracts. (1-SER-71, 78, 109).

- **Tutoring:** Anders and Walburger have no knowledge of the academic tutoring resources for any teams except lacrosse, football, and men's basketball. (1-SER-73, 99).

- **Social Media:** Anders and Walburger compared lacrosse only to football and men's basketball and admitted that women's teams receive acceptable coverage. (1-SER-76, 91, 92.)

Additionally, Petitioners have repeatedly required the reinstatement of lacrosse as a precondition for engaging in settlement discussions. (1-SER-113, March 18, 2022 letter demanding reinstatement of women's lacrosse or addition of another women's team; 1-SER-116, February 16 and 24, 2022 letter stating Fresno State is violating Title IX by eliminating the women's lacrosse team and discussing the women's lacrosse team; 1-SER-120, March 4, 2022 email proposing settlement only if Fresno State agrees to reinstate and continue women's lacrosse). In short, lacrosse, above all else, has been the focal point of this litigation.

## B. Denial of Initial Motion for Class Certification

On February 25, 2022, Petitioners filed a class certification motion, seeking the appointment of Anders and Walburger as class representatives. (Ex. 1, p. 3).

On August 16, 2022, the district court denied the motion without prejudice. (Ex. 1). The district court rejected Petitioners' proposed class, holding that no single class could encompass both the participation and equal treatment claim, and proposed two new class definitions for each claim that included all current and future female student athletes at Fresno State. (*Id.*, p. 10). Under the proposed new class definitions, the court found that Fed. R. Civ. P. 23(a)'s numerosity, commonality, and typicality requirements would be satisfied. (*Id.*, pp. 12, 14, 17).

However, the district court held that representatives Anders and Walburger were not adequate under Rule 23(a)(4) for either proposed class because: (a) there are "evidently conflicts between the interests of the class representatives" and any current and future female students at Fresno State who are not able and ready to play lacrosse; and (b) the "record plainly indicates that the principal purpose [of] this action is to protect (or restore) women's varsity lacrosse and that other considerations are secondary to that." (*Id.* at 20). In so holding, the court ruled that despite Anders and Walburger's post-deposition declarations indicating they desired to secure relief for all female student-athletes, the filings and evidence "as plead[ed] and developed to date" demonstrated "discernable conflicts" between the interests of the proposed class representatives and "other members of Fresno State's female student population who are not represented in this action as currently configured." (*Id.*) The district court did not foreclose Petitioners from certifying a broad class that

included all female student-athletes, with the proper representative(s).[1]

## C. Denial of Renewed Motion for Class Certification

On August 30, 2022, Petitioners filed a renewed class certification motion utilizing the definitions provided by the court. (Ex. 2, p. 1). Nothing else about the Petitioners' arguments or evidence changed. Rather than identify an alternative, non-conflicted class representative, Petitioners relied upon the same facts and class representatives already found not to have satisfied Rule 23(a)(4). They did attempt to retract their binding admissions by filing supplemental declarations stating that "the principal purpose of this case was not and is not to protect or restore women's varsity lacrosse" and that the true purpose of the case was to require Fresno State to comply with Title IX. (Ex. 2, p. 13). Otherwise relying on the same law as their previous motion, Petitioners argued any conflict should be viewed as speculative and, if anything, the district court should certify the classes as to liability only under Rule 23(c)(4) even if Petitioners could not satisfy Rule 23(a)(4). (*Id.* p. 3).

On November 22, 2022, the district court denied Petitioners' renewed motion. (Ex. 2). It did not issue broad pronouncements precluding the certification of a class that includes student-athletes from multiple sports teams, as Petitioners misleadingly assert. Instead, it made a fact-specific ruling that the same proposed class representatives were still inadequate class representatives under Rule 23(a)(4). In so

---

[1] The Court did not address Rule 23(b) or whether class counsel satisfied Rule 23(a).

doing, it held that "Plaintiffs do not account for the fact that the Court **assumed in deciding the first motion that the proposed class representatives intend to be neutral**." (*Id.* at 7) (emphasis added).

The district court rejected the argument that any conflict was speculative. (*Id.*, p. 8-9). It held that Petitioners could not ignore the reality "that this action has primarily been about the reinstatement of women's lacrosse, as pleaded and prosecuted to date." (*Id.* p. 14). Accordingly, the court ruled that: (1) other women's sports would not "be on fully equal footing with women's lacrosse;" and (2) without representatives from another team the proposed representatives would not provide non-lacrosse class members with "assurance of fair and adequate representation" to "'exclusively advance[]' their 'particular interests.'" (*Id.* at 15-16).

Finally, the district court denied the request to certify as to liability only, holding that class representatives must represent the interest of absent class members "at all times" and that liability and remedies could not be neatly separated. (*Id.* at 16-17). The renewed motion was again denied without prejudice and Petitioners were provided with the opportunity to certify a lacrosse-only class with the current representatives. The instant Petition followed.

## ARGUMENT

## I.    STANDARD OF REVIEW

A district court's decision regarding class certification is reviewed for abuse of discretion. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 980 (9th Cir. 2011).

"The district court abuses its discretion if its certification order is premised on impermissible legal criteria." *Id.*

Rule 23 Petitions "should be granted sparingly." *Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 957, 959 (9th Cir. 2005). There are three situations when an appeal under Rule 23(f) may be appropriate: the decision (1) involves an unsettled or novel question of law; (2) is "manifestly erroneous;" or (3) effectively ends the litigation or is a "death knell." *Id.* To be "manifestly erroneous," the error in the decision "must be significant; bare assertions of error will not suffice. Any error must be truly 'manifest,' meaning easily ascertainable from the petition itself. If it is not, then consideration of the petition will devolve into a time consuming consideration of the merits, and that delay could detract from planning for the trial in the district court." *Id.*

None of these situations exists here. The district court, relying on settled precedent, denied certification of a broad class because the only two proposed representatives did not satisfy Rule 23(a)(4) while providing an avenue for Petitioners to certify broad all-sports classes with different representatives or smaller classes. Petitioners' inability to marshal facts to meet Rule 23(a)(4)'s requirements, despite repeated opportunity, does not raise novel questions of law or constitute manifest error. Additionally, their own failure to seek certification promptly as required under Rule 23(c)(1)(a) does not create a "death knell."

## II.    THE PETITION IS UNTIMELY

Rule 23(f) states that a petition to appeal a denial of class certification must be filed "14 days after the order is entered." Because the district court denied class certification on August 16, 2022, Petitioners' December 6, 2022 petition, which challenges the Court's August 16, 2022 ruling, is untimely.

It is irrelevant that Petitioners filed a renewed motion for class certification because the deadline by which to appeal is subject to "inflexible treatment."[2] *See, e.g.*, *Nutraceutical Corp. v. Lambert,* 139 S. Ct. 710, 715 (2019) (Rule 23(f) is "not subject to equitable tolling"). Petitioners cannot rely on their renewed motion as a basis for resurrecting untimely arguments, regardless of whether the district court reiterated its prior rulings in its November 22, 2022 order.

## III.    THE DISTRICT COURT PROPERLY HELD PETITIONERS COULD NOT SATISFY RULE 23(A)(4)

Courts are required to conduct a "rigorous analysis" to determine whether all requirements of Rule 23(a) have been satisfied prior to certifying a class. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). "[P]laintiffs wishing to proceed through a class action

---

[2] Although Petitioners allude in passing to their renewed motion as also one for "reconsideration," they did not brief or effectively recite the appropriate standard for motions for reconsideration under Fed. R. Civ. P. 60(b) or L.Civ.P. 230(j). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Maves v. First Horizon Home Loans*, 461 F. App'x 636, 638 (9th Cir. 2011) (collecting cases).

must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," and must carry their burden of proof "before class certification." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275–76 (2014) (emphasis in original); *Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule."). A preponderance of the evidence standard is utilized in reviewing motions for class certification. *Martin v. Sysco Corp.*, 325 F.R.D. 343, 354 (E.D. Cal. 2018).

The merits of the class members' claims are irrelevant to the analysis as to whether Rule 23's factors have been satisfied. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it."). Here, the Petition is focused primarily, if not exclusively, on merits issues. These issues are immaterial where, as here, Rule 23(a)(4) has not been satisfied.

Rule 23(a)(4) authorizes certifications only when plaintiffs have satisfied their burden of proving that "the representative parties will fairly and adequately protect the interests of the class." *Andrews Farms v. Calcot, Ltd.*, 268 F.R.D. 380, 388 (E.D.

Cal. 2010); Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel" and will vigorously prosecute the action on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Andrews*, 268 F.R.D. at 388. "A representative is not adequate if that party is antagonistic or has conflicts with other potential class members." *Andrews*, 268 F.R.D. at 388.

## A.    The District Court's Ruling Is Consistent with Title IX Cases

The district court correctly held that the factual "circumstances such as those present here create a conflict that precludes certification of multi-sport classes represented solely by student athletes from a single sport." (Ex. 2 p. 11). It reviewed and relied upon cases where, as here, representatives from a single sport "would be antagonistic to those of other interested and able athletes" due to finite resources. *Bryant v. Colgate Univ.*, 1996 WL 328446 at *6 (N.D.N.Y. June 11, 1996) (women's ice hockey players would not be adequate class representatives for "all present and future Colgate University women students and potential students"); *Boucher v. Syracuse Univ.*, 164 F.3d 113 (2d Cir. 1999) (conflicting interests existed between students seeking the creation of a lacrosse and softball teams given "budget constraints;" denying certification of a single class); *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 290 (S.D. Ohio 2006) (conflict existed between named plaintiffs— members of the rowing team—and a broad proposed class, because "compliance

could conceivably be achieved, in part, by taking away the allegedly paltry resources allocated to women's rowing, and bestowing them along with new resources on other women's varsity sports, a prospect to which the representatives would not likely be amenable" in limiting class to rowing team); *Robb v. Lock Haven Univ. of Pa.*, 2019 WL 2005636, at *12 (M.D. Pa. May 7, 2019) (representative, a member of the rugby team, inadequate for a broader class due to likelihood of that representative advocating for certain remedies that benefitted rugby over others).

The district court's conclusion was not surprising or novel. Indeed, nearly every case that Petitioners relied upon to support certification of an "all present and future" female student athletes class *included representatives from more than a single team.*[3] That Petitioners were unable to find even one additional representative who was not a lacrosse player only highlights the reality of the inadequacy.

_____

[3] *A.B. by C.B. v. Hawaii State Department of Education*, 334 F.R.D. 600 (D. Haw. 2019), *rev'd and remanded sub nom. A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828 (9th Cir. 2022), *Cohen v. Brown University*, 991 F.2d 881 (1st Cir. 1993), and *Brust v. Regents of the University of California*, 2008 WL 11512299 (E.D. Cal. Oct. 24, 2008) each had class representatives from more than one sports team. Additionally, as the district court observed, *A.B. by C.B.* "sheds little, if any, light" on Petitioners' argument regarding a "speculative" conflict. (Ex. 2, p. 8). Petitioners indicate that *Brust* included only class representatives from women's lacrosse, but one of the three representatives was a wrestler. *Brust*, *supra* at *2. While a class represented by athletes from one team was certified in *Foltz v. Delaware State University*, 269 F.R.D. 419, 420 (2010), the conflict presented here in testimony and pleadings was not at issue in that case and the district court here correctly declined to follow that ruling. Overall, both the petition and the amici cannot identify a single case that is analogous to the situation here, where the proposed representatives have pled themselves out of satisfying Rule 23(a)(4).

**B.** **The District Court's Ruling Does Not Require Sport-Specific Advocacy and Is Not Manifestly Erroneous**

The Petition misleadingly argues that the district court created a new due process right to sport-specific advocacy that is manifestly erroneous. This argument ignores that the district court approved, indeed *created*, the class definitions Petitioners sought to certify, which included **all** "current and future" female students, regardless of sport. Clearly, the district court's orders confirm that a class of all "current and future female Fresno State students" *can be* certified, so long as Petitioners could find an appropriate representative(s).

The district court's initial denial created a roadmap for Petitioners. Rather than find a representative that could fairly represent the proposed class, they doubled down, demanding that the court ignore a record rife with conflicts between them (with *their* sports-specific advocacy) and the proposed class. The foundation of Petitioner's argument is a façade that crumbles under a cursory examination.

The district court's ruling is in line with the Due Process Clause and class action procedure rules, which insist that a class be "adequately" represented. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[T]he Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018) ("[S]erious conflicts of interest can impair adequate representation . . . thereby violating due process.")

There is nothing novel about this legal principle. The district court did not "create[] a new due process right to vigorous and single-minded advocacy, constitutionally barring athletes on one team from representing athletes on other teams in Title IX cases." (Pls. Pet. p. 21). Rather, it found that the proposed class representatives, like in *Amchem Prod., Inc. v. Windsor*, could not represent a broad class under Rule 23(a)(4), **based on the facts of this case**. 521 U.S. 591 (1997). In other words, Petitioners demonstrated an inability to advocate for the proposed class because they are sport-specific to the point of inadequacy. Accordingly, the district court correctly held that absent class members' rights to fair, adequate, and vigorous representation were not satisfied.[4]

The proposed representatives have current conflicts that will bleed through the entire litigation process. Indeed, they already have, infecting settlement discussions at the outset of the case. This conflict cannot be ignored and pushed aside as a "remedy-stage" issue, as Petitioners request. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 157 (The "mere fact that a complaint alleges … discrimination does not in

---

[4] The district court correctly applied *Amchem* where, as here, the Supreme Court held that the proposed representatives were inadequate to represent a larger class because the primary interests of the representatives and class members diverged. *Id.* at 626 ("Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."). So too here, the proposed representatives—two lacrosse players whose admitted primary focus is the immediate reinstatement of their sport—cannot alone represent a class that includes Fresno State female athletes with varied interests.

itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination.") quoting *East Texas Mo. Freight Syst. v. Rodriguez*, 431 U.S. 395, 405-6 (1977).

Finally, Petitioners appear to argue that under Title IX, there is a presumption that a broad class is *always* adequately represented so long as one representative alleges institutional discrimination. As set forth in Section III.A., this argument lacks merit and conflicts with established precedent. *Falcon,* 457 U.S. at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains, however, indispensable.")

## C.     The District Court Did Not Disregard Evidence

Petitioners opine that in clarifying their declarations, any conflict vanished. (Pls. Pet. p. 24). They ignore that the district court "assumed in deciding the first motion that the proposed class representatives intend to be neutral," and credited the new declarations "as to their intentions." (Ex. 2 pp. 7, 14).

Nevertheless, Petitioners' declarations, "however earnest," were weighed against the remainder of the record including deposition testimony, the SAC, and settlement negotiations to date. (Ex. 2, p. 14). The district court did not pay "little heed" to Petitioners' conclusory regurgitation of Title IX law or the self-serving change in declarations. (Pls. Pet. p. 25). Rather, it reviewed such items against a record that made clear "that this action has primarily been about the reinstatement of women's lacrosse, as pleaded and prosecuted to date" and even amidst Petitioners' "new-found neutrality" there remained "bias in favor of women's

lacrosse" by a preponderance of the evidence. (Ex. 2, pp. 14-15). That Petitioners disagree does not make this an appropriate case for interlocutory review.

### D.    Petitioners' Conflict Is Real

The district court correctly held that the representatives' conflict is not speculative, as it is plain on the record. The conflict has manifested in settlement offers (prior to class certification attempts) which *required* the reinstatement of lacrosse as a precondition of settlement (1-SER-113-126), pleadings which focus on and seek relief for lacrosse (1-SER-74),[5] testimony that shows favoritism and a lack of knowledge as it concerns *any* proposed class member other than lacrosse players (1-SER-52, 81), and the fact of Fresno State's limited athletics' budget.

This is not a conflict that *may* present itself, as "evidence of an actual conflict" has been established, distinguishing this case from those that Petitioners rely upon. The district court carefully reviewed the law Petitioners regurgitate in the Petition, to find that here, a conflict was indeed "truly present," because unlike *Cummings v. Connell* and other cases cited, evidence was produced to show "that class members actually possess[ed] opposing views" and there were finite resources to provide to class members. 316 F.3d 886, 896 (9th Cir. 2003). As such, the district court correctly held that "conflicting interests" and financial and legal "constraints" created an actual, not speculative, conflict. (Ex. 2 p. 11).

---

[5] As the district court noted, the SAC refers to "lacrosse" 128 times, with three or fewer references to other sports. (Ex. 2, p. 14).

### E.   A Liability-Only Class Is Improper

Certification of a class requires satisfaction of all of Rule 23(a)'s factors without presumption. *Falcon,* 457 U.S. at 160.  Petitioners argued that even if they cannot satisfy Rule 23(a)(4), certification is appropriate as to liability only.[6] Such an argument was properly rejected by the district court because Rule 23(c)(4) "issues" class must still meet the requirements of Rule 23(a) to be certified. *Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579, 579 (9th Cir. 2015); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015) (collecting cases). These rulings align with *Amchem*, which held that "structural assurance of fair and adequate representation for the diverse groups and individuals affected" was required despite the representatives' proposed understanding of their representational responsibilities. 521 U.S. at 627.

Petitioners ask the Court to accept a sweeping class with inadequate representatives, in an effort to delay confronting a conflict that currently exists. Approving such a delay tactic would create a reality where absent class members are represented throughout this litigation to their detriment, by individuals who do not possess the same interests. *Id.* at 594. It would also improperly result in a "death knell" *for Respondents*, by creating "considerable pressure" to settle independent of the merits of the claims. *Chamberlan*, 402 F.3d at 958.

---

[6] Petitioners' perfunctory mention of this argument is insufficient, and it should be deemed waived. *Maves,* 461 F. App'x at 638.

## IV. THE ORDER DENYING CLASS CERTIFICATION IS NOT A "DEATH KNELL" DILEMMA

Petitioners' argument that the failure to certify a broad and sweeping class will be a "death knell," is false and, if anything, a problem of their own making.

The Petition assumes that Title IX requires certification for the court to award relief. Title IX contains no such requirement. And Petitioners' counsel is currently litigating the same exact claims in a different district where they did not seek class certification, so it should be apparent that Petitioners can move forward without a class. *Balow v. Mich. State Univ.*, No. 1:21-CV-44, 2022 WL 3152232 (W.D. Mich. Aug. 8, 2022) (Title IX claims brought by members of eliminated swimming and diving program). Under long-standing Supreme Court precedent, the absence of a class does not alter Petitioners' ability to litigate this case because it does not deny their ability to obtain the relief requested. *See Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 481 (1978) (order denying certification not immediately appealable where it does not affect merits of plaintiff's claim and merely limits, but does not entirely dispose of, the scope of potential injunctive relief).[7] Furthermore, the rational for the "death knell" doctrine—which "assumes that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final judgment," *Coopers & Lybrand v. Livesay*,

---

[7] Petitioners do not assert that the absence of a class prevents the district court from ordering injunctive relief.

437 U.S. 463, 469-70 (1978), does not exist here, where Plaintiffs potentially may recover attorney fees, if they are a prevailing party, 42 U.S.C. § 1988(b). And, if a class is desired, Petitioners have a viable option by seeking to certify a lacrosse-only class. There is no need to consider the issues raised in this case in a piecemeal fashion, before the parties engage in merits discovery and before a final judgment.

Finally, Petitioners state that they need a broad class to maintain standing because "the last Petitioner currently enrolled" will graduate soon. Petitioners cannot blame the district court for a predicament of their own making; the elimination of lacrosse was announced in October 2020 and they waited until February 2021 to file suit. For reasons known only to Petitioners, they ignored Fed. R. Civ. P. 23(c)(1)(A) and *waited a year* to file a class certification motion. Petitioners attempt to sidestep their delays by contriving a death knell scenario where none exists.

## CONCLUSION

The district court's Order does not alter Petitioners' ability to obtain the remedies they seek, and instead assures that absent class members are not inadequately and unfairly represented. This Court should deny Petitioners' Petition for Permission to Appeal considering the well-reasoned district court orders.

Dated: December 16, 2022          Respectfully submitted,

Miller, Canfield, Paddock & Stone, PLC

/s/ Scott R. Eldridge
Scott R. Eldridge
Brian M. Schwartz
Erika L. Giroux
Ashley N. Higginson
Attorneys for Defendants-Respondents
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
schwartzb@millercanfield.com
eldridge@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system that will send notification of such filing upon all ECF filing participants.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

*/s/ Scott R. Eldridge*
Scott R. Eldridge (P66452)
Attorneys for Defendants-Respondents
eldridge@millercanfield.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(l) and Circuit R. 32-3(2) because this brief contains 5,032 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). In accordance with Circuit R. 32-3, the word count divided by 280 does not exceed the designated limit of 20 pages.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

DATED: December 16, 2022

> MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
>
> */s/ Scott R. Eldridge*
> Scott R. Eldridge (P66452)
> Attorneys for Defendants-Respondents
> eldridge@millercanfield.com